UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILANA L. ROBINSON, f/k/a ILANA L. DEUTSCH,

                              Plaintiff,

-v-

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,

                              Defendant.

18-CV-7689 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In this state-law action, Plaintiff Ilana Robinson challenges the decision of Defendant Berkshire Life Insurance Company of America ("Berkshire") to terminate the benefits payments she had been collecting under a Berkshire-issued disability income insurance policy. Although Robinson initially filed this action in state court, Berkshire and its since-dismissed codefendant, The Guardian Life Insurance Company of America ("Guardian"), removed the case to federal court on August 23, 2018. (Dkt. No. 1.) As the Court will explain below, however, Berkshire has failed to demonstrate that this case falls within the scope of this Court's subject-matter jurisdiction, and the case must therefore be remanded back to state court.

I.  **Background**

Berkshire, a wholly owned subsidiary of Guardian, issued a disability income insurance policy (the "Policy") to Robinson in April 2010.[1] (Dkt. No. 8 at 8–27 ("Compl.") ¶¶ 4, 9.) After Robinson suffered a total disability in December 2013, she began receiving benefits payments under the Policy in the amount of $3,890 per month. (Compl. ¶¶ 17, 23.) Effective August 25,

---

[1] The Court's discussion of the case's factual background is drawn from the allegations in Robinson's complaint, which are assumed for present purposes to be true.

1

2017, however, Berkshire began making these payments under a reservation of rights. (Compl. ¶ 26.) According to Berkshire, Robinson had supplied insufficient medical records to prove that she suffered from an impairment that entitled her to benefits under the Policy. (Compl. ¶ 27.)

In order to assess Robinson's continued eligibility for benefits, Berkshire soon thereafter arranged for Robinson to undergo a lengthy neuropsychological examination. (Compl. ¶¶ 30, 33.) Robinson, though, declined to submit to the testing Berkshire had ordered, and she offered to have a psychiatrist of Berkshire's choosing examine her instead. (Compl. ¶¶ 34–37, 52–55.) This proposed alternative proved unacceptable to Berkshire, and as a result, Berkshire terminated Robinson's benefits as of March 25, 2018, and obliged Robinson to resume making premium payments. (Compl. ¶¶ 52–58.) In taking these steps, Berkshire relied on Policy terms that allowed it to "require any proof that [it] consider[s] necessary to evaluate [a] claim" and to "have [a claimant] examined . . . as often as [it] may reasonably require to determine [the claimant's] eligibility for benefits." (Compl. ¶ 16.)

On July 25, 2018, Robinson filed a three-count complaint against Berkshire and Guardian ("Defendants") in the New York Supreme Court, New York County. (Dkt. No. 1 ¶ 1.) In Count One, Robinson claimed that Defendants had breached the Policy by terminating her benefits. (Compl. ¶¶ 81–97.) In Count Two, Robinson claimed that Defendants had violated New York's General Business Law, N.Y. Gen. Bus. Law § 349, by selling insurance policies that allegedly fall foul of New York's Insurance Law, N.Y. Ins. Law § 3216(d)(1), insofar as they allow Defendants to require a claimant to undergo neuropsychological testing as a condition for receiving benefits. (Compl. ¶¶ 98–112; *see also* Compl. ¶¶ 39–51.) And in Count Three, Robinson sought declaratory relief as a supplement to the damages and attorney's fees that she sought under Counts One and Two. (Compl. ¶¶ 113–24; *see also* Compl. at 19–20.)

Defendants removed this action to federal court on August 23, 2018 (Dkt. No. 1), and soon thereafter, the parties stipulated to Guardian's dismissal from the case (Dkt. No. 20). The remaining defendant, Berkshire, answered the complaint on September 26, 2018, and asserted a counterclaim seeking the return of all benefits it had paid Robinson under a reservation of rights. (Dkt. No. 23.) Robinson answered the counterclaim on October 16, 2018 (Dkt. No. 24), and the case proceeded to discovery (*see* Dkt. No. 27). The Court, however, expressed skepticism that the case had been properly removed to federal court and directed the parties to submit letters addressing the question of whether this Court has subject-matter jurisdiction over the action. (*See* Feb. 15, 2019 Minute Entry.) Although Robinson has declined to take a position (Dkt. No. 35), Berkshire contends that federal jurisdiction is proper (Dkt. No. 34).

The Court is now prepared to rule on the jurisdictional question.

**II.     Legal Standard**

While no party challenges this Court's jurisdiction over the case at hand, the Court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Typically, "the party asserting federal jurisdiction bears the burden of establishing jurisdiction," *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006), and in the case of an action that has been removed from state to federal court, the removing party must demonstrate that the federal court "would have had original jurisdiction to hear the [removed] claim[s]," *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011).

**III.    Discussion**

In arguing that federal jurisdiction is proper here, Berkshire invokes 28 U.S.C. § 1332, which gives the federal district courts subject-matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between . . . citizens of different States," 28 U.S.C. § 1332(a)(1). (Dkt. No. 1 ¶ 3.) Berkshire, a Massachusetts company that has its principal place of business in Massachusetts, has adequately shown that it and Robinson, a New York resident, are citizens of different states.[2] (Compl. ¶¶ 1–2.) The Court therefore must determine whether Berkshire, as the party invoking federal jurisdiction, has carried the additional burden of showing that an amount greater than $75,000 is at issue here.

Generally speaking, any amount pleaded on "the face of the complaint" is presumptively treated as "a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). But where, as here, the complaint does not "specify the particular amount of damages sought," the Court looks to the facts alleged in the complaint, along with those alleged in the removal papers, to determine whether "it appears to a reasonable probability" that the jurisdictional amount has been reached. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (second quoting *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994)). In making this determination, the Court considers each form of relief Robinson seeks: damages, attorney's fees, and declaratory relief.

---

[2] The Court notes that Guardian, a New York company, is not diverse from Robinson. (*See* Compl. ¶¶ 1, 5.) Ordinarily, the inclusion of even one nondiverse defendant brings a case outside the scope of a federal court's diversity jurisdiction. *See F5 Capital v. Pappas*, 856 F.3d 61, 80 (2d Cir. 2017) ("[C]omplete diversity of all parties is an absolute, bright-line prerequisite to federal [diversity] jurisdiction." (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 119 (2d Cir. 2014))). Here, though, Guardian has been dismissed from the case—albeit only after removal (*see* Dkt. No. 15)—and Berkshire claims that Guardian was never "a real and substantial party to the litigation" in any event and so should be disregarded for purposes of assessing diversity of parties (Dkt. No. 1 ¶ 7). Because the Court concludes that it lacks jurisdiction over this case for other reasons, it need not decide whether Guardian's initial inclusion as a party independently defeats federal subject-matter jurisdiction here.

As for damages, Robinson sought less than $75,000 at the time she filed her complaint on July 25, 2018. In particular, Robinson sought "past due disability benefits from March 25, 2018 to the present" and "a return of all premiums paid" during that same period.[3] (Compl. at 19.) Four months of benefits payments, at $3,890 per month (Compl. ¶ 23), come to $15,560, and four months of premium refunds, at a maximum of $137.79 per month (Dkt. No. 8-1 at 4), come to an added $551.16. Taken together, then, the maximum damages Robinson could have recovered at the time she filed suit were nearly $60,000 shy of the jurisdictional threshold.[4]

Initially, Berkshire argued that the total damages at issue must be calculated differently. Citing *Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394 (2d Cir. 2003), Berkshire claimed that the true amount in controversy is "the sum of monthly benefits from the alleged improper [benefits] termination until *trial*," rather than only those unpaid benefits that had accrued by the time the complaint was filed. (Dkt. No. 1 ¶ 19 (emphasis added).) *Scherer*, though, held only that certain damages that had accrued during the pendency of a state-court trial factored into the amount in controversy in a federal suit filed *after* that trial. *See Scherer*, 347 F.3d at 395. Far from supporting Berkshire's view that all damages that accrue

---

[3] Robinson also sought unspecified "consequential damages." (Compl. at 19.) But because the complaint "gives no explanation whatsoever as to the nature of any [such] damages," the Court "do[es] not include any claim for consequential damages in calculating the amount in controversy." *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 266 (S.D.N.Y. 2017).

[4] Berkshire has asserted a counterclaim against Robinson, seeking to recover all benefits it paid her between August 25, 2017, and March 25, 2018. (*See* Dkt. No. 23 at 8–10.) The Court, however, need not consider whether the value of this counterclaim forms part of the total amount in controversy. *See Kaplan v. Computer Scis. Corp.*, 148 F. Supp. 2d 318, 321 (S.D.N.Y. 2001) ("[I]t is inappropriate in a removed case to consider the amount of Defendant's counterclaim in assessing the amount in controversy for jurisdictional purposes.") Berkshire's counterclaim seeks the return of seven monthly payments of $3,890 each, for a total of only $27,230. Thus, even if the Court assumes, favorably to Berkshire, that the counterclaim may be considered for jurisdictional purposes, the total damages sought by all parties nonetheless fall more than $30,000 short of the overall amount required for diversity jurisdiction.

during the pendency of an action represent the amount in controversy in *that* same action, *Scherer* remarked that "the amount in controversy is to be ascertained as of the time of *filing*." *Id.* (emphasis added). And indeed, as Berkshire itself now acknowledges (*see* Dkt. No. 34 at 2), courts in this District have routinely applied this principle to hold that the amount in controversy for jurisdictional purposes in a suit challenging a termination of benefits payments is limited to the amount of unpaid benefits that have accrued by the time the suit is filed, *see, e.g.*, *Conzo v. SMA Life Assurance Co.*, No. 01 Civ. 11243, 2003 WL 21018823, at *2 (S.D.N.Y. May 6, 2003) (rejecting the view that a party "may rely upon the accrual of withheld or denied benefits up to the date of trial or judgment" to establish the amount in controversy); *Berlly v. U.S. Life Ins. Co.*, No. 00 Civ. 1999, 2001 WL 40771, at *2 (S.D.N.Y. Jan. 16, 2001) ("[T]he prevailing view is that, when an insured is seeking benefits accrued under a policy, the amount in controversy is determined by the amount recoverable at the time of the action.").

As all parties now recognize, then, Robinson's damages claims are worth well under $75,000 for jurisdictional purposes. Thus, the Court must ask whether the additional relief Robinson seeks—attorney's fees and declaratory relief—is sufficient to make up the deficit.

As for the former, Robinson seeks attorney's fees in connection with her claim under New York's General Business Law § 349. (*See* Compl. ¶ 112.) Berkshire argues that "[t]he addition of a claim for attorneys' fees, in itself, raises a reasonable probability that the total claim [at issue here] exceeds $75,000." (Dkt. No. 1 ¶ 21.) But "[t]he Second Circuit has held that attorney's fees may be used to satisfy the amount in controversy only where they are recoverable as of right pursuant to statute or contract." *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 755 (E.D.N.Y. 2001). And, critically here, the New York statute pursuant to which Robinson seeks attorney's fees "is not mandatory and leaves discretion with courts to

decide if an award of attorney's fees is appropriate." *Serin v. N. Leasing Sys., Inc.*, No. 06 Civ. 1625, 2013 WL 1335662, at *2 (S.D.N.Y. Apr. 3, 2013); *see also Squillante v. Cigna Corp.*, No. 12 Civ. 6003, 2012 WL 5974074, at *4 (S.D.N.Y. Nov. 28, 2012) (excluding the potential value of a fee award under this statute when calculating the jurisdictional amount in controversy).

This leaves Robinson's declaratory-judgment claim. Because that claim is "equitable in nature," its jurisdictional value "is measured by the value of the object of the litigation." *DiTolla v. Doral Dental IPA of N.Y.*, 469 F.3d 271, 276 (2d Cir. 2006). Seizing on this tenet, Berkshire points out that Robinson seeks a declaration that New York law renders aspects of the Policy invalid. (Dkt. No. 34 at 2.) Thus, Berkshire reasons, Robinson has placed into controversy "far more than the benefits allegedly due when the complaint was filed" and, specifically, has put at issue "benefits payable *after* a judgment," which are "equal to the 'face value' of the [P]olicy—*i.e.*, the monthly benefit multiplied by the maximum benefit period." (Dkt. No. 34 at 4.)

Berkshire's efforts to assign Robinson's declaratory-judgment claim the full value of the Policy, however, are unavailing. To be sure, "[a] court may . . . consider the entire value of an insurance policy or other installment contract in its determination of the amount in controversy if the validity of the policy or contract itself is at issue." *Conzo*, 2003 WL 21018823, at *2. Here, though, in contrast to the cases Berkshire cites, Robinson does not seek a judicial declaration that would "*rescind* a disability insurance contract," *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (emphasis added), or that would, conversely, "enjoin [Berkshire] from cancelling [her] polic[y]," *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003). Instead, Robinson seeks to invalidate the Policy only to the extent that it allows Berkshire to "require [her] to submit to a battery of testing as a condition of receipt or continued receipt of benefits." (Compl. ¶ 119.) Critically, even if the Court were to award Robinson the full declaratory relief

7

she seeks, such relief would not require Berkshire to pay *any* future benefits—let alone the *maximum* amount of benefits potentially available to Robinson under the Policy—except to the extent that Robinson can prove that she is "totally disabled subject to and pursuant to the terms of the Policy as conformed to [Robinson's view of] New York Insurance Law." (Compl. ¶ 122.) Unlike cases, then, in which the "object of the litigation," *DiTolla*, 469 F.3d at 276, is to nullify a contract entirely, or to enjoin another party from doing so, the more limited declaratory relief sought here puts at issue some amount less than the Policy's full worth, *see, e.g.*, *Law Audit Servs., Inc. v. Studebaker Tech., Inc.*, No. 96 Civ. 926, 1996 WL 137492, at *4 (S.D.N.Y. Mar. 27, 1996) (noting that where "the equitable relief sought" in a litigation "involves only a portion of" a contractual agreement, "the contract price . . . for the entire [a]greement does not necessarily express the value to the Plaintiff of the particular rights at issue").

But while the Court can safely conclude that the value of the declaratory relief Robinson seeks is something less than the face value of the Policy, it can do no more than speculate as to just *how much* less. After all, "the monetary value of the benefit that would flow to [Robinson] if . . . declaratory relief were granted," *G.distributors, LLC v. Scanlon*, No. 18 Civ. 2101, 2018 WL 6329444, at *4 (S.D.N.Y. Dec. 3, 2018) (quoting *Am. Standard, Inc. v. OakFabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007)), depends on multiple contingencies, such as Robinson's future medical condition, the nature of the evidence Robinson supplies Berkshire as proof of that condition, and Berkshire's determination as to Robinson's eligibility for continued benefits. Thus, because the relief sought here "is a declaration of plaintiff's rights in the future," and because "the value of [those] rights under the [P]olicy . . . is only speculative," Berkshire cannot carry its burden of showing that Robinson's claim for declaratory relief brings the amount in

controversy in this suit over the $75,000 minimum required for federal diversity jurisdiction.[5] *Russ v. Unum Life Ins. Co.*, 442 F. Supp. 2d 193, 198 (D.N.J. 2006); *see also Am. Standard*, 498 F. Supp. 2d at 717 (noting that a claim for equitable relief cannot factor into the amount in controversy where the value of the relief is "'too speculative' or 'immeasurable'" (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1270 (11th Cir. 2000))).

The Court therefore concludes that Berkshire has not established a reasonable probability that the amount in controversy here is sufficiently high to support federal diversity jurisdiction.

## IV. Conclusion

For the foregoing reasons, this case shall be REMANDED to state court.

The Clerk of Court is directed to close the case on this Court's docket and to remand the matter to the New York Supreme Court, New York County.

SO ORDERED.

Dated: April 16, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[5] Of course, the declaratory relief Robinson seeks would entitle her, at a minimum, to the value of the unpaid benefits that accrued between the date on which Berkshire terminated her benefits and the date on which she receives a favorable judgment. But the Court has already concluded in the context of Robinson's damages claim that it may not consider the monetary value of the unpaid benefits that might accrue between the date on which Robinson filed her complaint and the date on which a final judgment is entered. Berkshire offers no reason that a different rule should apply in the context of Robinson's claim for equitable relief. *See Conzo*, 2003 WL 21018823, at *2 (considering "only the withheld benefits that ha[d] accrued up to the date of the commencement of the suit" in an action exclusively seeking equitable relief).